E. J. FLAHERTY CONTRACTING COMPANY, A CORPORA-
TION OF THE STATE OF NEW JERSEY, AND MILDRED
A. ROHN, PROSECUTORS, v. THE TOWN OF KEARNY
IN THE COUNTY OF HUDSON AND STATE OF NEW
JERSEY, A MUNICIPAL CORPORATION, AND PATRICK
J. MAHER, DEFENDANTS.

Submitted October 3, 1929—Decided May 27, 1930.

Before Justices TRENCHARD, LLOYD and CASE.

For the prosecutors, *Nicholas S. Schloeder.*

For the defendants, *John H. Cooper* and *Riker & Riker*
*(Thomas E. Fitzsimmons,* on the brief).

The opinion of the court was delivered by

CASE, J.    This writ of *certiorari* brings up for review the
award of a contract by the town of Kearny, in the county of
Hudson, for the repavement of a portion of Davis avenue.
The case turns on the construction to be given section 4 of
"An act concerning the construction, reconstruction, or re-
surfacing of any state highway, county road or municipal
road, and the award of contracts therefor." *Pamph. L.* 1923,
*p.* 495, which provides:

"Whenever any patented, propriety pavement or paving
material, or ingredients used in paving, is included in the
specifications, it shall be the duty of the board or body having

charge of the work not alone to specify such type of construc-- tion, but to place in the specifications one or more equivalent. types of construction upon which no patent exists, or upon which there is no proprietary right or condition as an alter-- nate type, and bids shall be asked for on the various types so specified, and the award shall be made to the lowest respon- sible bidder on the types of construction so placed in com-- petition by the governing board."

The proposals called for bids on Warrenite Bitulithic pavement, admittedly a patented pavement, and, as alternates, on National pavement, also conceded to be a patented pave-- ment, and Asphalt Block pavement, a pavement upon which no patent exists and upon which there is no proprietary right or condition. The low bid was for Warrenite Bitulithic. It was made by the defendant Patrick J. Maher, and the contract was awarded to him. The question is whether Asphalt Block may lawfully be thus used as an alternate type to Warrenite Bitulithic. To be an alternate it must be an "equivalent type of construction." For clearer understanding the following definitions are given: Bitumen is a mineral pitch or asphalt; likewise asphalt is mineral pitch. Bitu- lithic, as its origin indicates, is a kind of paving, the main body of which consists of broken stone cemented together with bitumen or asphalt.

The patents by which the so-called patented pavements are protected are not upon the ingredients but upon the processes by which the ingredients are mixed and laid. As was said by James H. Howard, a consulting engineer on roads and pavement, and a witness called by the defendants—speak- ing specifically of Warrenite Bitulithic: "The ingredients are crushed stone, sand, sometimes a little powdered lime- stone, these being the mineral ingredients, which are cemented together with asphalt cement. The construction of the pave- ment, however, is controlled by patents; it is not in the in- gredients thereof, but in the method of putting the three portions thereof together on the street." The witness then proceeds to describe this Warrenite Bitulithic process as follows:

"This Warrenite Bitulithic pavement, the bituminous concrete is prepared of relatively coarse crushed stone, ranging from coarse pretty close to even about one-quarter of an inch in size, mixed hot and cemented together with asphaltic cement, spread in place, and not rolled. On this is placed a finer grain asphalt concrete mixture, principally sand and bitumen, being spread by hand, and the second mixture is rolled onto and into the lower mixture; the finer surface is treated sometimes with fine sand and sometimes powdered limestone, spread on and rolled into place. This is under the Wallace patents and—I don't know the patents now, but they are all in my office, if you want them; but I only tell you this; and it seems wise to state that while they are all bituminous pavements, the method of putting them together is the only real difference. When they are all done, it is all an asphalt concrete pavement, including the asphalt block, which is also an asphalt concrete pavement."

The same witness then described the National pavement thus:

"You understand, my answers are entirely upon the specifications in suit, and not as National pavement has been laid otherwise, or elsewhere. I will answer the question by stating that the National pavement specified in this case requires a bituminous concrete or binder layer to be spread upon the prepared foundation hot, rolled and finished to a thickness of one inch; the mixture or composition of the wearing surface also to be placed on this binder also is to be one and a half inches thick when finished. It is composed of natural mineral matter, as found in nature, heated and thoroughly mixed bitumen and cemented together by asphaltic cement. The patents connected with it are the Popkis patents. I briefly state the gist of those patents."

The witness then gives this description of Asphalt Block:

"Trap rock or other hard, suitable stone is crushed and when crushed is co-mingled from relatively coarse pretty close down to and including powdered stone. These are heated and mixed with asphalt cement and the mixture compressed into block form at the factory or works where made. The blocks

are then sent to the location where they are to be used, and in these specifications are laid by hand on a mortar bed of one-half inch thickness, the mortar bed being composed of cement and sand. I have not spoken of the base, because the base or foundation of all these pavements is the same. After they are placed squarely and firmly together in a uniform surface, that surface is painted over with a hot asphalt cement, or to the common mind, it is hot tar poured upon and painted over the outer surface, which surface is called a squegee coat, and while it is hot, it is ironed into the joints between the blocks and it also covers the entire surface, making the surface continuous and waterproof."

. The witness concludes his direct testimony by saying that all of these pavements are bituminous concretes, and he adds that they are such because they have a bituminous cement to hold the mineral aggregate together.

The court will take judicial notice of the fact that immediately preceding the passage of the legislation there had been very general dissatisfaction with and wide public criticism of the action of public bodies in making awards of road contracts upon specifications calling for pavements so protected by patent or proprietary rights that open competition was impossible, with consequent uncertainty as to whether the prices, and therefore the costs to the taxpayers, were fair and reasonable. We consider that the legislation is remedial in character and subject to the rules of construction applicable to statutes of that description. It is an ancient canon of construction that the court shall consider what the mischief was that the legislature sought to remedy as well as the remedy intended to be provided by that body to cure the mischief. The Chief Justice, stating this rule in *Conservation and Development Board* v. *Veeder,* 89 *N. J. L.* 561, quotes with approval the language of Blackstone: "It is the business of the judges so to construe such statutes as to suppress the mischief and advance the remedy." The mischief was the absence of fair competition in the award of road contracts, and the statute was obviously passed by the legislature as a corrective. That being so, the act should be liberally construed to effect its object. *Horner* v. *Webster, executor,* 33 *N. J. L.* 387, 405.

It appears from the evidence that a specification calling for Asphalt Block as an alternate to Warrenite Bitulithic did not, under the circumstances of the case, allow fair competition in price. The reasons why this was so need not be here detailed further than to say that the differences in the respective costs of finished roadways under the two specifications were fundamental. It is not, however, the difference in final costs that controls. If the competitive opportunities were presented, as intended by the statute, the difference in price would simply be dispositive of the award, and the work would follow the low bid. But to so select the alternate specification as that a bid thereon would naturally and almost necessarily be higher than that of a selected patented pavement at once suggests that, however unsophisticated the arrangement of the specifications may have been, the object of the legislature is not being attained; and the guilelessness of the selection of the alternate pavement is seriously impugned by the testimony that at an open meeting of the town council the town engineer said that the intention was "to use Warrenite Bitulithic and that they merely put the Asphalt Block in there as an alternate to cover the law." Nor could particular fault be found even at this development if the course pursued were in fair compliance with the statute as thus illumined. There was not, in our opinion, such compliance.

The use of the word "construction" in the statute becomes the more significant when we find that it is the "construction" of a pavement that is patented. We think that the legislature in using the word "construction" did so in the knowledge that certain construction methods were the subjects of the patents that constituted the crux of the problem. We find that by the expression "equivalent types of construction" the legislature meant types of road building that in all the elements that enter into construction, including ingredients, composition and method of laying, are as nearly identical as may be—allowance being had for the patented feature— with the designated patented pavement. Having in mind

that it is the patent that carries the exclusive control, the immediate suggestion is that the legislature intended by its language that the road building authorities should, to give proper and informative competition in calling for a bid on a method of construction controlled by a patent, call also for a bid on an unpatented construction of the same general type and as nearly identical as the word "equivalent" signifies.

It is, we think, quite apparent from the testimony that however Asphalt Block may resemble the other two pavements in constituent substances, it is not an equivalent type of construction. Comparing it specifically with Warrenite Bitulithic, the Asphalt Block is compressed into forms at the factory, transported in this partially finished condition to the site of the work, laid squarely and firmly by hand on a mortar bed and painted over with hot tar, whereas Warrenite Bitulithic is made at the site, spread on the roadway in layers and then rolled. The act of construction, viz., the putting together as a structure, is in the one instance totally unlike the other.

There are non-patented pavements which do appear from the evidence to have the similarity in equivalent type of construction which the statute anticipates, as for instance a spread asphalt pavement known as F-ABC-2, which, according to the testimony of Ralph T. Haller, also a consulting engineer on pavement construction, was developed and perfected to take the place of the patented process to which we have referred. Likewise, it appears from the examination of Irving Hochstader, a consulting pavement engineer called by the defendants, that the method or "mix" known as C-ABC-2 is a non-patented asphalt spread pavement approved by the state highway department and used by the latter as one of its specifications. Therefore, the application of our understanding of the statute to the existing circumstances is not a *reductio ad absurdam*.

Our conclusion is that the specifications adopted by the town of Kearny were unlawful in that they called for a patented pavement and did not include "one or more equivalent types of construction upon which no patent exists," and that the award was unlawful because based thereon.

The defendants question the propriety of the prosecution of the writ by E. J. Flaherty Contracting Company, but it may be inferred from the testimony that that corporation is a taxpayer of the municipality. At any rate no doubt is expressed on the proposition that Mildred A. Rohn, a prosecutrix, is a resident taxpayer.

It is further contended that the prosecutors are in laches and that they are estopped from prosecuting their suit by *Pamph. L.* 1921, *art.* 20, *ch.* 195, *p.* 515, which (section 56) provides that no *certiorari* shall be allowed to review any ordinance for any improvement after the contract therefor shall have been awarded. But the ordinance is not under review; and the specifications, which, with the award, are now before us, were not prepared, according to the wording of the ordinance, when the ordinance was adopted. On the day following the award notice was served on the town of Kearny of the application for the writ and the proceeding has been diligently prosecuted.

The resolution awarding the contract is set aside, with costs.